Gerald P. McKENZIE, Petitioner,

v.

DISTRICT OF COLUMBIA DEPART-
MENT OF HUMAN SERVICES,
Respondent.

No. 01–AA–840.

District of Columbia Court of Appeals.

Argued March 14, 2002.
Decided July 11, 2002.

Marion E. Baurley, Washington, with whom Jennifer A. Renton, Annapolis, MD, was on the brief, for petitioner.

Edward E. Schwab, Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for respondent.

Before TERRY, SCHWELB and REID, Associate Judges.

TERRY, Associate Judge.

In November of 2000, petitioner Gerald McKenzie and his guardian, Sheridan Bacchus, moved from the District of Columbia to a suburb in Maryland. Thereafter the District of Columbia Department of Human Services ("DHS") determined that Mr. McKenzie was no longer eligible for Medicaid benefits through the District of Columbia because he was no longer a resident. Mr. McKenzie contested that ruling, but a hearing examiner upheld it, and the Chief Operating Officer of DHS adopted the opinion of the hearing examiner as a final decision. Mr. McKenzie now seeks further review in this court, arguing that, despite moving to Maryland with Ms. Bacchus, he remains a resident of the District of Columbia. We affirm the decision of DHS.

## I

Petitioner, Gerald McKenzie, is a thirty-eight-year-old man who is disabled by Down's syndrome. He was born in the District of Columbia and lived here with his mother until she died in 1982. In 1995, Sheridan Bacchus, his aunt, petitioned the court to be appointed Mr. McKenzie's legal guardian. A Superior Court judge found that

> [Mr. McKenzie's] ability to receive and evaluate information effectively or to communicate decisions is impaired to such an extent that he ... lacks the capacity to take actions necessary to ... obtain, administer, dispose of real and personal property ...; provide health care, food, shelter, clothing, personal hygiene, and other care ...; [and] acquire and maintain those life skills that enable him ... to cope more effectively with the demands of his ... own person and of his ... own environment ....

On the basis of these findings, the court granted the petition and appointed Ms. Bacchus as general guardian and limited conservator of Mr. McKenzie.[1]

For several years Mr. McKenzie lived with Ms. Bacchus at an address in the District of Columbia. During that time, he received Medicaid benefits through the District of Columbia and "day treatment services" from the D.C. Association for Retarded Citizens. In November 2000, however, Ms. Bacchus and her family, including Mr. McKenzie, moved to Hyattsville, Maryland. In January 2001 Ms. Bacchus informed DHS of the change of address. After receiving this notification, DHS determined that Mr. McKenzie was no longer eligible for Medicaid assistance from the District of Columbia because he was no longer a District resident. Ms. Bacchus contested the determination and requested a hearing, asserting that "Mr. McKenzie remains a legal resident of the District of Columbia."

At the hearing, Mr. McKenzie argued, through counsel, that he was not capable of forming the intent to abandon his domicile and thus remained domiciled in the District of Columbia. Further, he maintained that District of Columbia law allowed his guardian to designate his domicile, and that Ms. Bacchus had stated her intent that Mr. McKenzie be a resident of the District. The hearing examiner rejected these arguments, concluding that Ms. Bacchus had "the legal authority to determine [Mr. McKenzie's] place of residence, and she exercised that authority by moving him to the state of Maryland with her when she changed her residence to Hyattsville, Maryland." The examiner also ruled that DHS's determination was consistent with both the DHS Income Maintenance Administration Policy Manual ("IMA Manual")[2] and the federal Medicaid guidelines published in the Code of Federal Regulations.

The decision of the hearing examiner was adopted as the final decision of DHS after an administrative appeal. The matter is now before us on Mr. McKenzie's petition for review.

---

1. Ms. Bacchus was appointed limited conservator for the purpose of "obtain[ing] control over the ward's savings account in order to set up a burial fund and a bank account for emergency use at her discretion." Several months later Marion Baurley was appointed as successor conservator.

2. The IMA Manual states in relevant part: "A person is a resident if s/he is living in D.C. voluntarily and not for a temporary purpose and has no present intention of moving out of D.C." IMA Manual, Part IV, § 2.3. It also provides: "Assistance must terminate at the end of the month in which a person moves to another state." IMA Manual, Part IV, § 2.6.

## II

■ We must uphold DHS's decision "if the findings of fact are supported by substantial evidence in the record considered as a whole and the conclusions of law flow rationally from these findings." *Kalorama Heights Limited Partnership v. District of Columbia Dep't of Consumer & Regulatory Affairs*, 655 A.2d 865, 868 (D.C.1995) (citations omitted). Furthermore, when an agency's decision is based on an interpretation of the statute and regulations which it administers, we will uphold that interpretation as long as it is not unreasonable or contrary to the language or legislative history of the statute. *Id.; accord, e.g., Levy v. District of Columbia Board of Zoning Adjustment*, 570 A.2d 739, 746 (D.C.1990); *see generally Chevron U.S.A., Inc. v. Natural Resources Defense Council*, 467 U.S. 837, 842–843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

Medicaid was established by Title XIX of the Social Security Act, 42 U.S.C. §§ 1396 *et seq.* (1994).

> Title XIX . . . authorizes Federal grants to States for medical assistance to low-income persons who are age 65 or over, blind, disabled, or members of families with dependent children or qualified pregnant women or children. The program is jointly financed by the Federal and State governments and administered by States. Within broad Federal rules, each State decides eligible groups, types and range of services, payment levels for services, and administrative

and operating procedures. Payments for services are made directly by the State to the individuals or entities that furnish the services.

42 C.F.R. § 430.0 (2001).

Although the program is administered by the states,[3] the federal government has promulgated requirements that states must meet in order to be eligible for federal funding. *See Hamer v. District of Columbia Dep't of Human Services*, 492 A.2d 1253, 1255 (D.C.1985). One such requirement is that every state participating in Medicaid must provide medical services to all "eligible residents" of that state.[4] 42 C.F.R. § 435.403(a). A resident is a person over the age of twenty-one who is not residing in an institution and is "[l]iving with the intention to remain there permanently or for an indefinite period (or if incapable of stating intent, where the individual is living) . . . ." 42 C.F.R. § 435.403(i)(1)(i).[5]

The District of Columbia has also established requirements for eligibility in public assistance programs under the District of Columbia Public Assistance Act of 1982 ("Public Assistance Act"), D.C.Code §§ 4–201.01 *et seq.* (2001). The Public Assistance Act provides that "[r]ecipients of assistance from the District who move to another jurisdiction with intent to remain in that State shall be ineligible to receive assistance from the District immediately upon the date of the recipient's last day of residency in the District of Columbia." D.C.Code § 4–205.04.[6] The Public Assis-

---

**3.** Under the Medicaid regulations, the District of Columbia is considered to be a state. *See* 42 C.F.R. § 400.203.

**4.** Neither party disputes that Mr. McKenzie is "eligible" under the federal guidelines for Medicaid.

**5.** A person is considered incapable of stating intent if that person (1) has an I.Q. of 49 or

less or a mental age of seven or less; (2) is judged legally incompetent; or (3) is found incapable of indicating intent by a physician, psychologist, or other similarly licensed individual. 42 C.F.R. § 435.403(c).

**6.** Residency is defined in relevant part in D.C.Code § 4–205.03:

> (a) A resident of the District of Columbia is one who is living in the District of Co-

tance Act, however, offers no guidance on the residency status of individuals who are incapable of stating intent.

In this case, Mr. McKenzie's claim of residency hinges on his intent to live in the District of Columbia. Through counsel, he concedes that he is no longer physically present in the District of Columbia and that he is incapable of stating his intent. He argues, however, that District of Columbia law authorizes his guardian to establish, on his behalf, his intent as to residency. D.C.Code § 21–2047(b)(2) (2001) states that a guardian may "[t]ake custody of the person of the ward and establish the ward's place of abode within or without the District, if consistent with the terms of any order by a court of competent jurisdiction relating to the detention or commitment of the ward." Ms. Bacchus has stated that, although Mr. McKenzie has physically moved to Maryland, she intends for his residence to remain in the District of Columbia.

■ This argument is not foreclosed by the Public Assistance Act, but it is contrary to the plain meaning of the federal regulations. The pertinent regulation states that if a person is incapable of stating intent, that person's residence is "where the individual is living." 42 C.F.R. § 435.403(i)(1)(i). Mr. McKenzie was adjudicated incompetent and incapable of stating his intent, and thus his residence is in Maryland, where he is currently living. Although District of Columbia law authorizes a guardian to change a ward's place of residence, it does not authorize the guardian to establish the ward's intent. Thus the guardian has lawful authority to

move the ward to a different state, but the exercise of that authority does not change the legal effect of the move under the Medicaid regulations.

We therefore hold that DHS did not err in determining that Mr. McKenzie was no longer a resident of the District of Columbia after he moved to Maryland with Ms. Bacchus. That decision is accordingly

*Affirmed.*

lumbia voluntarily and not for a temporary purpose; that is, one with no intention of presently removing himself or herself therefrom. A child is residing in the District if he or she is making his or her home in the District.

(b) Temporary absence from the District, with subsequent returns to the District, or intent to return when the purposes of the absence have been accomplished, shall not interrupt continuity of residence.